2.2-16-0405 Consolidated with Case 216-0803 Charles F. Schmuck, III, plaintiff, athlete, and cross-appellant v. E. M. Kline v. George V Delivered the notice in Fort St. James Solutions Fort St. James Solutions Limited Appellants and cross-athletes Arguing on behalf of Fort St. James Solutions and George V Mr. James Pletka Arguing on behalf of William J. Pye and Maria Ventures Mr. Howard L. Teplitzky Arguing on behalf of Charles Short and Mr. Marina T. Tarmack Arguing on behalf of Brad Grayson and Scott Lamont Mr. David M. Jenkins Arguing on behalf of Joe Sipper and Sipper PC Mr. Nicholas A. Gannon Arguing on behalf of Ted A. Donner Mr. Ted A. Donner Okay, time's up. Twenty-four years, and I have never had one of these, so I will definitely put this in my script. And I usually look at the person I'm going to call on, but I can get Ms. Farmer, but gentlemen, which one of you is Mr. Pletka? Please. May it please the Court. Good morning, Justices. Good morning, Counsel. This has been a case that's sort of long in the tooth, as you can glean from the record. But it really stems from the failed attempts five separate times of seeking causes of action against my clients and the co-defendants in the trial court. It involves the denial of a motion for sanctions. And really, that took about the bulk of the two years before we got to this Court to deal with the sanctions issue. If the Court wants, I can provide a brief recitation of the facts, unless the Court is It would have to be very brief, based upon your time. So you can go ahead and do your equality. The short of it is, in February of 2014, the trial court entered an order granting a Rule 137 motion for sanctions. And in that order, the Court expressly found that each of the plaintiff, Randy Short's complaints were not well-grounded in fact or in law. The Court found specifically that Short alleged facts that contradicted previously alleged facts, that Short ignored facts that negated his cause of action in subsequent complaints, and that Short tried to allege causes of action for which he lacked standing or that were barred by the statute of limitations. In accordance with that order, the Court directed the defense counsel to file the petitions, which were done. Shortly after the ruling on February 14th, Short filed a motion to reconsider, blaming all of his prior attorneys for the complaints that the Court found sanctionable. However, when the Court Now that was at the hearing, correct? That was Or was that in a filing, the motion to reconsider? The motion to reconsider was heard after the sanctions were granted and before the fee petitions were decided on. But the Court did allow the motion to reconsider for the sole purpose of deciding whether or not the plaintiff's conduct rendered him culpable for the sanctions. As opposed to his attorneys? Yes. And that's where we come to the issue for this Court, really, is whether or not there was evidence shown in the trial court that Short was culpable for the complaint of sanctionable conduct. In our case, we had an evidentiary hearing, and the evidentiary hearing was held about two years later, February 1st of 2016. Short was the only person that testified. The defendants tried to get some other information and some other documents, but were prohibited from doing so for assertion of attorney-client privilege. And that argument about whether or not the privilege was waived went on for about 10 to 12 months. We had a briefing before the Court. The Court decided that Short did not waive the attorney-client privilege. And so, faced with that, we were left with basically examining Short and whatever records we had available to us at the time. Counsel, there was a motion to dismiss that was denied. We denied one of them, but there are two that remain pending. So the notice of appeal didn't name the attorneys, and you didn't serve the attorneys for a substantial period of time. Why shouldn't this appeal be dismissed? Respectfully, Justice Burke, that is an area that my co-counsel is going to address. My role today is to address the arguments on whether or not Short should have been determined to be culpable in the trial court alone. So if I may, I defer that. So, against this backdrop, we have a trial court determination after the evidentiary hearing that there was insufficient evidence to impose liability for the prior complaints against Short individually. And the Court found specifically that there was not enough evidence to say that Short was either actively participating or that Short was the reason for these defective complaints. How long was he away from the country? I mean, did he live somewhere else to provide, you know, all of the information and stay there, or did he come back periodically and talk with attorneys? My understanding from what the record shows is that a lot of his communications were either telephonic or email. I don't know that he ever actually visited with counsel, but we do know that there were a number of telephone calls and emails with his counsel. He was a resident of California at one point, then Australia. We believe he's still in Australia now, so a lot of his communications were remote. Counsel, the trial court entered a 10-page order, made 37 specific findings of that. Are any of those in your opinion against the manifesto? I think that, yes. The findings of the trial court, we think, are against the manifesto of the evidence when you look at exactly what Short testified to. And there's really a number of different facts that we think the trial court either ignored or did not give enough weight to. Short readily admitted that he provided everyone at his counsel with a 40-page memorandum that he created that identified all of the facts, and those were facts that would support his causes of action that were being alleged against all of the defendants. Is that memo in the record? That memo is not in the record. We can never get it. The record shows several phone calls, emails, reviews and approvals of prior drafts, and these were things that were admitted during the course of the evidentiary hearing. The evidentiary hearing itself reflected that. May I finish? Yes. The evidentiary hearing itself reflected all of the efforts that Mr. Short undertook personally to give information to his counsel. And under the Spiegel case, under the authority that we cite in our brief, even if it's just legal arguments that the counsel is advancing, a party can still be held responsible for those legal theories and for the active representation or active involvement in the case, which is what we contend the record shows Short was completely involved in the preparation of the complaints, the authorization of the filing, all of the information that went into the complaints that the trial court found to be sanctionable. Was there any evidence that Mr. Short actually changed legal strategies in any of the complaints that were filed, that he marked something off or said, no, this is not what I meant? Justice, I notice that I'm out of time for my portion. Is it okay to answer? Yes, please. Thank you. There are pieces of evidence in the record to show that he did have a hand in changing allegations, addressing the strategy. And if your honor goes to the record to see the Straus and Malk bill, which is in the record at 3317 and 3318, there are time entries that the attorneys listed where they had multiple phone conversations with Randy Short about what information should go in the Fourth Amendment complaint. Revisions that needed to be made based on conversations with Mr. Short. Short having performed his own research to look into either certain other parties or certain causes of action. Was his research legal or factual? Factual. Short had, well, I guess I should preface that by saying Short had frequent, extensive communications with attorneys, both for providing the factual information and for the legal theories. At some point, Short testified in his evidentiary hearing that he basically feigned ignorance and said, I don't know what legal theories there are. That's why I have attorneys to represent me. But as the record shows through the evidentiary hearing and his testimony, he knew enough to know what information he needed to supply his attorneys to meet a specific cause of action. So there is testimony in the evidentiary hearing transcript that shows that Short not only provided all of the facts to go into these complaints to all of his prior attorneys, but he also had to address the legal issues because he knew that certain counts were being dismissed and he wanted to try and avoid dismissal. Thank you. All right. Mr. Tiplinski. Thank you very much, Your Honor. If I may, Justice Burke, I'd like to answer your question regarding the motion to dismiss. As you correctly pointed out, the court has already denied the motion that Mr. Donner filed. It should be in substance the identical motion that the other two defendants here, I'm sorry, appellees here filed. But to get to the guts of what they've said, the only thing jurisdictional is the filing of a proper notice of appeal. The notice of appeal in this case was proper. The case caption was the same caption that was in the underlying case. Of course, it didn't have the attorney's names in it because the attorneys weren't actual parties to the case, number one. Number two, and more importantly, the notice of appeal expressly recited the orders that were being appealed from and attached the June 2015 order denying our motion for sanctions against the attorneys. Finally, as Your Honor recognized, the notice of filing of the notice of appeal was sent to them, albeit late. There's no dispute that they received it all in December of 2016. Their briefs in this case were not due to be filed until March of 2018. There's absolutely no prejudice to any of the parties in this case, and that's why we believe the motion to dismiss should be denied. There is also one other point, if I may, that I'd like to add to what Mr. Kuiper said. Another important point is the fact that 10 days after this evidentiary hearing on the sanctions, Mr. Short went ahead and filed a malpractice case in federal court against these very attorneys here. Is that part of the record here? It is part of the record. The complaint? The complaint. It is. It was filed with the circuit court following the evidentiary hearing in our closing arguments, and the reason why that's important from our perspective, Your Honor, is that that waived the attorney-client privilege. Retrospectively or retrospectively? For all purposes, I believe, Your Honor. The attorney-client privilege was waived, so what had been happening is that Mr. Short had been holding this privilege in his pocket, not allowing us to discover any of the facts related to the interactions between Mr. Short and his lawyers. Which one of them created these complaints? What was communicated? We couldn't know any of that. And then 10 days after the evidentiary hearing, he filed a malpractice case. He practically ran to the federal courthouse after Judge Barones banged his gavel closing the evidence. My portion of the argument, Your Honor, deals with the Rule 137 motions against the attorneys and the motions to dismiss that Judge Barones granted, essentially stating that he didn't have jurisdiction to hear them because of Rule 137 says what it says, which says they have to be filed within 30 days after a final judgment or within 30 days after a post-trial motion. The law has always been that a Rule 137 motion or a 2611 motion, its predecessor, has to be filed within the case. It has to be filed while the court still has jurisdiction over the case. In 1993, the Supreme Court clarified Rule 137 didn't change anything. It clarified it by adding the 30-day language and the post-trial motion language to obvious instances when a trial court still has jurisdiction over a case. Judge Barones feared that a litigant can file 137 motion after 137 motion after 137 motion and keep it going and going and going. That's what he said in his ruling during the oral argument on the motions. First of all, that's not what's happened in this case, and that isn't what happened for the years and years and years is that that was the rule in the state of Illinois, that that was the law, which wasn't changed by the 1993 amendment. What Judge Barones should have been fearful of was in a case like this where we had two and a half years' worth of litigation after the entry of the final judgment in 2013 where parties are filing pleadings, where parties are filing motions, where parties are taking positions, that nothing was covered under Rule 137. What prevented you from adding the attorneys when you filed the 137 petition? Nothing prevented us from doing so except for the fact that we didn't know at that time which of them or any of them would have been responsible for this. There were three separate sets of lawyers of law firms. There were five different lawyers amongst them. There were five different complaints, but we had one common denominator, and that common denominator was Mr. Short. Each complaint was filed by one of the attorneys, though, correct? Each complaint was filed by one of the attorneys. And you designated in your 137 petition where the sexual conduct was in these various petitions, various complaints. That's correct, Your Honor. But what we did also was say, well, look at complaint number four. It contradicts complaint number two. So then why don't you file against two and four and sort it out at trial and see who had the correct information and who didn't? Well, hindsight being as it is, that's perhaps what we should have done except that we don't believe we had that responsibility or obligation at the time because we believe that while a court has jurisdiction over the case in general, a Rule 137 motion can be filed in that case. It can't be filed in another case. It can't be filed later on. But as long as the trial court has jurisdiction over the case, you can file a 137 motion. And the way we did it was the more prudent way to even do it. The first thing we tried doing was get Mr. Short to waive or to argue that Mr. Short had waived his attorney-filing privilege by pointing at his lawyers in his motion to reconsider. Doing that would have given us more information. It would have given us more of a factual basis at that time to file what we filed. You know, I think we made the argument in our complaint, I'm sorry, in one of our briefs that says that we could have been violating Rule 137 by filing a 137 petition wrongfully against one, two, or three of these attorneys. That could have been litigated, though, earlier, early on, which is the issue of 137. Let's get it done when the judgment is final or any post-judgment motion is final. Had you brought them, as Justice Burke has suggested, because you did identify portions of complaints and it was clear who drafted those because their names were somewhere on them, then that could have been argued, but you wouldn't have lost your chance to actually bring it. That's correct. Had we brought it against everyone within 30 days of the dismissal with prejudice of the Fourth Amendment complaint, we wouldn't be talking about this issue right now. But what I'm arguing here, Your Honor, is that we're talking about this issue because Judge Barones got it wrong by dismissing it because Rule 137 allows us to bring these motions while the court still has jurisdiction over the issue. Your position is you can bring a 137-odd infant item. You bring one, you can continue to bring more and more, adding different parties, as long as one of them is pending. I think that that's not what we're arguing for. That's not the intent of the rule. No, but if you change a rule, it applies to all circumstances. You can't just say, well, here, this is what we would do. So if we accept your position, then once Rule 137 is filed, you can continue to file them as long as there is no outward or finite boundary as long as the court has jurisdiction over some petition, some 137 petition. I agree with that. But I want to add, if I can, may I continue, Your Honor, that that's always been the law. And that was certainly the law before the 1993 amendment to Rule 137 that the cases say didn't change anything. So realistically, I mean, you file it against the plaintiff, you litigate it for two years, and then before that goes final, then you pick off one of the attorneys, litigate that one for a couple more years, then pick off another attorney, file against that attorney, and then you get to the third attorney. By the time you get to the third attorney, it's pending for, what, six, eight years before they are brought in on the 137? So as long as the court has jurisdiction, I suppose that's a possibility. That's always been the possibility. It's never been the practice. Does it matter here that all these complaints were signed by counsel and not by the plaintiff? Didn't that put you on notice as to who the culpable party, if at all, who that would be? That would have been simple, and I agree with you, Your Honor, if there would have been one law firm. No, but you said we don't, we might be responsible for 137 ourselves or filing against counsel, but counsel signed the complaints. Not the defendant plaintiff here. The original plaintiff did not sign these complaints. Correct. Counsel did. Correct. Therefore, isn't counsel responsible for what is in the complaint? Counsel is responsible for what is in the complaint that they signed, but what we didn't know was whether or not the facts alleged in Complaint 2 were false and formed the basis of what would have been the facts alleged in Complaint 4.  It seemed perfectly prudent under these circumstances to decide, well, rather than go after the lawyers, even though they signed the complaint, they had to have gotten the information from someone and that someone had to have been the plaintiff in this case. And that's what we did. That was the call that we made because we could have, because Rule 137, on our belief, didn't prevent us from doing that. Thank you very much. Ms. Harman. Good morning, Justices. May it please the Court. I want to address a couple of the things that were raised earlier with Mr. Pfeiffer. You asked whether Mr. Short lived out of the country during this whole time, and he did. He lived in Australia. He's working there. And Judge Barones did find that there were no in-person meetings between Short and counsel. All the communications were via email and telephone. And Australia is 13 hours ahead, so the timing was always difficult to get on the phone with his attorneys. In terms of the facts, all the facts that Judge Barones found, and I listed them in my brief, and I cited to the record, to the testimony, I don't think defendants have shown at all that they were against the manifest weight of the evidence. In fact, Mr. Pfeiffer said that Short feigned ignorance in knowing what the legal theories were. Well, Judge Barones specifically found that Short was consistent and credible in his testimony. He says that Short did not develop the legal theories upon which the complaints drafted by Donner were based. Short provided Donner with the facts as he knew them and left it to Donner to determine whether Short had any claims against the defendants. That's in the record at page 75. Short relied on Siprit to develop a litigation strategy, and Short agreed with the strategy Siprit developed and with the allegations in the third amendment complaint. Short did what a client normally does. He gave the attorneys all the facts as he knew them, and apparently they were in a 40-page memorandum full of facts. There's nothing in the record saying that that memorandum contained legal theories or that he insisted on certain legal theories being pled. He time and time again testified at trial that he relied on his attorneys to develop the legal theories and the causes of action. Were there any documents tendered at that hearing or any place in this proceedings where Mr. Short was given documents to review, the complaints to review, and we might have any cross-outs or no saying, no, I want it done this way? No, there were no documents or no evidence to that effect. But Mr. Short did testify that he would review the draft complaints. He would have questions. He would point out facts that he thought were wrong or could be more clear. But he didn't tell the attorneys what to plead in terms of causes of action. But there was no evidence. And I guess that leads to the issue of the malpractice case being filed and the waiver of the attorney-client privilege. You know, there's no gamesmanship here. At some point, Mr. Short realized something went wrong. He was sued personally for sanctions. He didn't draft any of these complaints. The sanctions order was entered in February of 2014. Do you agree that if he had filed a malpractice action before judgment on these petitions that that would open the door to attorney-client material? I do not agree with that, Judge. Why not? Because in terms of waiver, if you're going to waive the attorney-client privilege, you have to put the specific attorney-client communications at issue in this case. And Mr. Short never waived the attorney-client privilege in this case. He denied that he was culpable. That's not a waiver. You have to put specific communication. So if, say, if Mr. Short had, like Justice Hutchinson said, a draft of a complaint where he had made changes and he had suggested legal causes of action, if he put that in his evidence, then that would have opened the door to the waiver. But he didn't do any of that. In fact, he was pretty steadfast in maintaining the attorney-client privilege. So for purposes of this hearing, no, it would not have been a full-fledged waiver. Now, for sure in the malpractice case it is because everything would have been at issue there. But here he did not put any specific attorney-client privilege issue into play. And that's, according to State of the Right, which is a second district case, is what needs to be done in order to waive the privilege. And one thing that appellants did not address at all is that even if, and I don't think there's any way that the trial court's findings could be against the manifest way of the evidence, but even if it was, the trial court entered an order denying sanctions. The standard review is abuse of discretion. And according to the Supreme Court in doubt, there are three things, three elements to look at in terms of whether the trial court abuses discretion in denying sanctions. And the trial court met all of them here. It made an informed decision. The trial court did impose sanctions against Mr. Short. Initially it did. And they granted a motion to reconsider. Correct. Okay. Correct. So initially it did. And then it had the full-fledged hearing where it was in the best place to rule on the demeanor and the credibility of this witness. Now, he was the only witness at trial. And I don't think there was really anything. I don't know why the defendants couldn't have called the attorneys. There were questions they probably could have asked the attorneys that wouldn't have invaded into the attorney-client privilege. I don't think it's a violation of the attorney-client privilege to ask the attorney who drafted the complaint. I don't think that would be a waiver. So I think they are going too far in saying that Mr. Short's gamesmanship was involved here. He just was doing what he was trying to do to get out of the sanctions that he didn't think he was responsible for. Who filed the or who prepared the malpractice complaint? An attorney named Joseph Gentleman. Is that still pending? It is still pending, Judge. Yes. You said that the attorney-client privilege wouldn't have been waived by filing that lawsuit, but it would have been waived in the actual lawsuit itself. Correct. I mean, once a privilege is waived, it's waived, is it not? I mean, are you saying that everything is going to come out in that lawsuit, but then it couldn't be put forth in this lawsuit because it's still privileged, even though the privilege is gone? Well, so the way it happened, so the malpractice case was filed and appellants filed a motion to reconsider before the trial court asking that they could, you know, use these documents because the privilege had been waived. So now we're on a motion to reconsider, which is another abuse of discretion standard. And one of the elements is that the evidence that you're seeking to introduce, the new evidence, because they were arguing it was newly discovered evidence, needs to be so conclusive that it would change the result at trial. And Judge Baronis addressed that and said, you know what, they're filing, Short is filing a malpractice case against his attorneys. He obviously thought he's been improperly represented and they've done something wrong. He just, the trial court found that any evidence, if any, would have been cumulative and would not change the trial results. My question to you was more pointed, though, and that is, had that lawsuit been filed before Judge Baronis made his decision, you said that attorney-client privilege would have been waived. It's gone. So my question is, you know, why then would you argue that it would still be in place in this case, even though it's gone somewhere else? And maybe my understanding of privilege isn't correct, but my understanding is if it's gone, it's gone. Once it's waived, it's waived. And my, I'm getting, what I'm getting to is not just this hypothetical of had they filed, had he filed the lawsuit before, but what I'm getting to is, was the motion to reconsider akin to a filing of a malpractice action? By pointing the finger at your attorneys to say, I'm not culpable for this, is that the equivalent of filing a malpractice action? Not in a situation where he, this short, is defending himself against a sanctions motion. And, in fact, one of the cases we cited said specifically that if you're defending against a motion, you're not waiving the attorney-client privilege. That would just eradicate the whole privilege. If any defense that you brought up, which could, you know, you're relying on your attorney's advice, just because it's relevant to your defense doesn't mean that it's a waiver of the entire attorney-client privilege. If he had articulated in his testimony specific acts of Attorney Donner or Attorney Sipritz or any of the other attorneys, would those have been a partial waiver on that particular issue that would have opened the door? Other than say, I just relied on what my attorneys told me. Perhaps, yes, Justice. If he had said, Mr. Donner told me, blah, blah, blah. Well, I didn't agree that Mr. Donner wanted to do this, but he said this was the way it should be pledged, so I accepted it. That would be a waiver as to that particular communication. But no bigger than that. No, I agree, no. Thank you. Thank you. Okay. Oh, thank you, Mr. Jenkins, for getting up. May it please the Court, Counsel, I'm Mr. Jenkins, and I'm representing Brett Grayson and Straus and Locke. I'm going to focus my arguments, Your Honors, on the denial of the sanctions under 137 against the Attorney General.  Mr. Goen is going to address the issue of the jurisdiction and whether the notice of appeal was defective or not. Your Honors, this Court should affirm the circuit court's June 11, 2015, order, because Judge Barrios said that Baroness had properly denied the so-called amended motion for sanctions as being untimely. The plain language of Rule 137 requires the motion be filed within 30 days of the final judgment. Here, Your Honors, the motions were filed 16-and-a-half months after the final judgment had been entered into the case. I think Justice Burke and Justice Jorgensen focused exactly on the fallacy, I think, of the defendant's position. Their position is, well, so long as there's something in front of the judge, you can continue to rule, you can continue to file sanctions motions, and we can continue to extend the jurisdiction of the Court. Was that the rule under Wood Smoak and the prior statute? I don't believe so, Your Honor, and I focus on the Landau case. And I know Mr. Kaplinsky didn't understand in his reply to me why I did so, but the Landau case, which is under even the 611, even the prior version, if you look at the fact of that case, a appeal had been filed in a proceeding, and the court-appointed attorney filed a motion in the trial court saying, I want an award of fees to defend the appeal. So the trial court had jurisdiction over that particular pleading. The other side didn't file the motion, wanted to leave to file a motion for Rule 137 sanctions at the time. The court said, no, it's 30 days. The court's lost jurisdiction to decide the issue. So while it was tied to jurisdiction under the previous cases like the Wood Smoak and the Landau, even the Landau recognized that you're not going to just continue to have jurisdiction over Rule 137 simply because someone is filing papers in the trial court. I also like to – I think this is a great example of it. If you look at this case under the defendant's argument, the evidentiary hearing here was concluded about three years after the final judgment. After that evidentiary hearing, both the defendants and the plaintiff filed motions in the trial court to reconsider, to file a Fifth Amendment complaint. So again, under the defendant's argument, they could have again filed a motion for Rule 137 sanctions against an attorney because the trial court still had jurisdiction. The motion in Landau wasn't one that would have extended jurisdiction, was it? I mean, it didn't attack the judgment in any way. No, and neither does the Rule 137 motion here. The Supreme Court has made it clear that the Rule 137 is not a closed trial motion. So it alone doesn't extend the jurisdiction of the court either. So you're right. The motion that was filed in Landau didn't extend the jurisdiction, but the court had jurisdiction over that particular issue as to the fees. But you can't file your notice of appeal until that issue is the 137 is resolved. Correct. Once the 137 is filed, it's a question now that the appellate jurisdiction has to hold off. There's a delay in the appellate jurisdiction, and the trial court technically should have limited jurisdiction over the Rule 137 motion that's pending, but not all other matters that should be, you know, should come up in the course of the proceeding. Well, I guess one of the issues is whether this 137 motion was a true amendment to a motion. Right. Because, I mean, you can amend a motion as long as it's pending, correct? Judge, I don't believe there is any mechanism for amending a motion, quite frankly. The code of civil procedure doesn't provide for it. However, I think for this particular case, the so-called amendment related to new parties to the case. Again, 10-plus months after there's a final judgment, my client had even withdrawn from the case. They're filing a motion to bring in other attorneys who had been even relieved from the case maybe a year or two before. The point is, you know, they say, okay, well, the trial court had jurisdiction. Well, they didn't have jurisdiction technically over these attorneys. They had been granted leave to withdraw. They were out of the case. So they're trying to bring a new party with a new motion well over 30 days from the final judgment. So, again, the Supreme Court and the Illinois Supreme Court Rule 137 specifically provide it's treated as a separate claim. And so if it's treated as a separate claim, Judge Baronius was correct. It's a new claim. The amended motion was a new claim against new attorneys and new parties. And there is no mechanism for filing a tiny bar claim against new attorneys or new parties and relating them back to previous parties. And I think my counsel has conceded that the relation back doesn't apply. Well, is there any issue anyway that the court has jurisdiction over the parties? The attorneys are not parties unless they put themselves in that position, like being found incontent or something of that nature. So jurisdiction over the attorneys really wasn't an issue, was it? Well, when the motion for Rule 137 was filed 16 months later, it would be a question of whether the attorneys were still subject to the court's jurisdiction. But I don't think no one has argued at the time whether rules to show cause possibly could be issued. There's probably mechanisms. In this case, it was really clear that they missed the 30-day deadline. It was a conscious decision not to file against the attorneys in the first place. My time was up, so I can't address those particular arguments. But it was a conscious decision in the first place. And so at this point in time, it was just on time that it was very clear, Judge. Thank you. We ask for it to be approved. Thank you. Mr. Gowan? Or Gowan? Sorry. Gowan. Gowan. Good morning, Justices. Nicholas Gowan on behalf of Sipric PC and Joseph Sipric. For this part of the argument, I will also be addressing Straus and Melk's motion to dismiss as well as Sipric's motion to dismiss for lack of jurisdiction before this court. However, before I address that, I just want to address one issue that has been discussed both by Mr. Tuplenski as well as Mr. Jenkins regarding the Rule 137 motion as discussing whether or not it's jurisdictional. I think Judge Barones in the circuit court was correct. This is not a jurisdictional issue. It's an issue of timing akin to a statute of limitations. Rule 137 clearly states that such a motion must be brought within 30 days. Of course, Judge Barones still had jurisdiction over the matter. I believe Justice Hutchinson is correct that he did not have jurisdiction over the attorneys. However, he did have jurisdiction over the matter, but this issue is one of timing, not of jurisdiction. We addressed that in our briefs, and I believe that counsel refocused or attempted to refocus the attention toward a jurisdictional issue, even though that is not what Judge Barones said in the lower court. But if you miss the time, then you have given up jurisdiction. I mean, if you don't file something on time, then the trial court doesn't have jurisdiction, or if you don't file your appeal within the 30 days, we don't have jurisdiction. That is correct, Justice. So they're related, but they are separate. That is correct, Justice. As to the motion to dismiss for lack of jurisdiction, Justice Burke asked the question earlier as to why this court actually has jurisdiction over Sippert and Straus and Malk, even though it denied the motion to dismiss from Donner. I believe that the court denied Mr. Donner's motion to dismiss because it was filed belatedly. On the other hand, Straus and Malk's motion to dismiss as well as Sippert's motion to dismiss were filed in February 2017, long before any motions were filed in this court as far as the substantive briefs. So this court chose to accept those briefs and accept it with hearing. So I believe that is an issue separate from Donner. Specifically, Sippert and Straus and Malk's argument is premised on the basic concept of fundamental fairness and properly notifying the successful party below. Both Sippert and Straus and Malk were the successful parties in defeating the Best and Pye's motion for sanctions. They had the right to know whether or not Best and Pye would then file a notice of appeal.  In fact, it's stronger than Nussbaum because they were not parties below. They were no longer in the case. They had no reason to follow the docket. And quite frankly, even if they did follow the docket, the only thing they would know is that Best and Pye filed a notice of appeal against Short. And they would know that some random number of orders were at issue. Not one mention was about specifically Sippert or Straus and Malk. It was just the discussion of the order generally. Are you referring to the caption or the discussion of the orders? I'm talking about the caption, Judge. But the caption, according to the Supreme Court rule, has to be the same in the trial court and up here, correct? Not quite, Justice. 303A, as well as supported by Nussbaum, says that the caption should address who the parties are. There is an argument to be made that, for example, let's assume that only one of the defendants below were to bring an appeal in this action. And they would choose to only bring that one appeal against Short. Of course, in that situation, the caption below would include both of the defendants as well as Short. However, in this situation, Sippert, Nussbaum, Straus, and Malk were parties below. They would have no idea that they were involved in the situation. It's not just one of substance over form. This is exactly substantive because there's no way that the parties would know. Best and Pye, they have attempted to shift the argument to focus on prejudice and say, well, there's no prejudice here. Well, that's wrong. First of all, Nussbaum only talks about prejudice if the mistake was form over substance. This is not form over substance. This was a substantive error. A form error would be if they misspelled someone's name or if they mistitled the notes of appeal. This substance here goes directly to the jurisdiction that the appellate court has over a party. To the extent there is prejudice, of course there is. This case has been pending since 2010. Joseph Sippert. Wait a second. So your position is if there is a successful or unsuccessful 137 petition that includes parties who are not otherwise named in the caption, we have to reframe the caption for a notice of appeal. Is that your position? I'm sorry. Can you restate that question? Yeah, it is kind of a good question. Okay, here's the deal. We have Smith v. Doe. And then there's a number of 137 petitions, successful, unsuccessful, which, however, the appellant would have to modify the notice of appeal such that it would be Smith v. Doe or Dover's, whichever it said, and all of the other parties must be included in the caption of the case on the notice of appeal. Is that your position? I believe that's what this form requires. Okay. Why wouldn't it be sufficient to direct it to the person or the party in a timely fashion and not use the word fiddle with the Supreme Court rule about the caption? Well, that's a separate issue. 303C requires notice within a particular time period. What we're talking about now is 303A, which requires that the parties who were actually the successful litigant below be provided notice by being placed in the caption. But there are two separate issues and, quite frankly, two separate errors that the appellants in this action, Best and Pye, failed to perform. What you're talking about is then they have to be properly served, and they have to be served with a document that has their name on it such that they don't just think it's erroneous, got nothing to do with me. Correct. But I want to be clear that the crux of our argument is not based on service. That's the tail wagging the dog. Yes, we understand that in December of 2016, several months after the notice of appeal was filed, we received notice. And the courts have been clear that unless there's prejudice, then the belated notice is not an issue. That's not what I'm talking about here. I'm talking about actually getting notice in the caption of the notice of appeal such that the party that was successful below would be aware that they are now considered a party before this panel. Thank you. Oh, I hope you're Mr. Donner. I am, Your Honor. Thank you. May it please the Court, my name is Ted Donner, and I am here representing myself, which is certainly an auspicious position to be in, but things fall as they do. I want to emphasize more than anything else what you don't have before you. I've heard a lot of statements today about things that weren't there. For example, Justice Burke asked about whether the Rules 137 motions spoke to the issues that were going on in those pleadings. No, there's never in the motions for sanctions any specific reference to specific defects that were apparent supposedly in these documents. We filed, I filed, a motion for leave to intervene, which was granted. I was a party who should have gotten notice of this appeal, regardless of whether there was an appeal being brought against me. I was granted leave to appear as a party in that case when the sanctions motions were first brought up, and I have been a party to these proceedings technically ever since. I brought a motion to dismiss before the judge below when the first motions for sanctions were brought against the attorneys, arguing not just timeliness of the 30 days, but the procedural defects that were there, including the fact that, as Justice Burke pointed out, the 137 motion should point out what's wrong in the election pleadings. Your Honors, I said in my appellee's brief to this Court, and I want to emphasize this, there are a lot of transcripts you don't have before you. And under the rules, under Chicago City Bank v. Wilson, under the cases we cited on pages 14 and 15 of my brief, you should have the transcripts from the hearings that matter. The reply that we got back, footnote 6 of page 11, says that these don't matter because they're not including evidence pertinent to the issues on appeal. The only thing that's supposed to matter is 30 days, 30 days, 30 days. Well, the fact is, Your Honor, that Mr. Pfeiffer started today, way back at the very first of these arguments, at the very first point that was made, he tried to quote from what happened on April 4th of 2014 to tell Your Honors that there was a finding that something was done that was sanctionable. That seed upon which every other argument's been made today isn't in a transcript before the Court. We objected in our appellee's brief to the fact that the April 4th, 2014 hearing does not have a transcript. I certainly wanted to see it. When I came into the case again in 2015, having left in 2012, I would have liked to have known what happened that a judge would say something about something that I filed in court five years prior. I didn't get to see that transcript. It didn't exist. There's never been since then any kind of bystander's report put together for that hearing or for the October 3rd, 2014 hearing, the March 13th, 2015, June 26th, when my motion to dismiss was supposed to be up, July 24th, April 29th, 2016, and most importantly, Your Honor, in my pleadings, my first amended complaint was the first and only document that the defendants in that case, the underlying case, responded to. That was not heard by the same Judge Baronis that heard everything that's been before this Court. It was heard by his predecessor. I never, until the sanctions came up, had ever in my life appeared before Judge Baronis in this case. I appeared before his predecessor. His predecessor granted a motion to dismiss without prejudice. I filed an amendment addressing the concerns that were brought up in that motion and that hearing, and I withdrew thereafter. That pleading was abandoned by my successor. So the document that I had filed before the Court never got heard, never got considered, never was dismissed on any grounds by the judge. There is nothing in the record whatsoever to say that anything that I ever did before that Court was sanctionable in any way. But we are supposed to take an inference from a hearing that took place on April 4th of 2014 that I was not present at, I was given no notice of, and this Court has no record of. So since some decision, whether it's published or not, is going to come out of this Court that says, these things happened in the Court below, I certainly want to emphasize more than anything else that there is nothing of record about anything that I ever did. I also argued, Your Honors, in the brief that, and I want to emphasize, that I don't think that this case was resolved wrongly with respect to Mr. Short. The judge held an evidentiary hearing and found that there was no sanctionable conduct. The rule in this State is that a judge doesn't have to make any findings whatsoever in denying a motion for sanctions. The only thing the judge has to do find exists is one is granted. The only record of any hearing with respect to sanctions in this Court that is properly before the Court is that one because there is a transcript. If that one is what's before the Court, then I would point out to the Court that the arguments over subject matter were never discussed, either in the Court below or here. I've heard a lot about the attorney-client privilege in the last 45 minutes. The fact is, Your Honors, nobody has ever argued over what subject matter waiver took place. It's been an all-or-nothing argument by the attorneys in this case. Either all of the attorney-client privilege was waived or none of it was, and I would point out to Waste Management and Insurance Context for why that's just plain wrong. Your argument is not that a complaint is not sanctionable if it's abandoned, is it? I mean, if you file some totally frivolous plea and then it's later abandoned for whatever reason, theoretically, you'd still be sanctioned for it, correct? Theoretically, similarly, Your Honor, and if there had been any kind of a hearing with respect to that pleading that we were here to talk about whether it should be affirmed or not, I could certainly defend that pleading. In terms of the timeliness, I think that 30-day rule and what Mr. Jenkins said is important to remember. The one thing with Rule 137, Your Honor, is that when you look at it, it distinguishes between post-trial motions and Rule 137 motions. You can bring a 137 motion while a post-trial motion is pending. Your Honor asked about the one case, I want to say it's Woodsmoke. Woodsmoke is a case where somebody filed a motion for sanctions after the 30 days, but there was a post-trial motion pending. Rule 137 was amended to conclude that same post-trial motion language. The language in Rule 137, though, Your Honor, is a post-trial motion is pending, not a 137 motion is pending. They're different creatures, and the statute, Rule 137, specifically gives that extension of time for a post-trial motion consistent with Woodsmoke, consistent with Logan only. There's nothing in that language that gives you that kind of an extension if there's another 137 motion pending. So I would say, and I apologize, I'm running over. I just want to make this one point, if I may. One of two things is true. Either I walk alongside with my client years after we go away from each other, in which case I would ask you to firm dismissal of the 137 motion against me for the same reasons you should sort. There was an evidentiary hearing. The court found there was nothing sanctionable. That's it. End of story. If I am not tied at the waist with him and my intervention as a party gives me the right to stand on my own two feet and make my own positions known, I was entitled to the notice that Rule 137 requires, which is to say I should have been told that there was a motion pending against me 30 days after the last post-trial motion was resolved by the trial court at the latest. And for those reasons, Your Honor, I would ask that you affirm the trial court below and dismiss the motion that claims the arguments on sanctions in both cases. Thank you very much for your time. Thank you. And then Mr. Toplinsky. Thank you. I want to briefly point out and remind the court that Judge Baronis did find the complaints sanctionable. What he found against Mr. Short ultimately was that he was not responsible for them. But he certainly found the complaints, including the one that Mr. Donner drafted and the other attorney defendants here, were sanctionable. Did Mr. Donner intervene and the motion was granted? If I recall the record, Your Honor, that's correct. Well, then he's a party that should be in the caption pursuant to Supreme Court rule of the appeal. I believe he intervened. But actually, if my memory serves correctly, the date that Judge Baronis heard the motions to dismiss, Mr. Donner wasn't there to present his motions. The motions were granted on timeliness grounds, and he denied Mr. Donner's motions as moot. That's my recollection. Including the motion to intervene? I'm sorry, Your Honor. I don't recall. I don't want to mislead the court. Let's assume for a moment his motion to intervene was granted. Yes. He would then be a party that pursuits Supreme Court rule. He should be on the caption of your notice of appeal. Otherwise, you have a jurisdiction issue as it relates to him. Do you not? I don't believe that we do. And I believe that that argument, along with Mr. Gowen's arguments, really elevate form in this case over substance. Because here's what happens when the pleading shows up in the mail, and it's a case that you've worked on, and it's got a bunch of orders attached to it. You've got to read them. And if you don't see your name in the caption, you're still charged with reading them, especially when you're an attorney. Wait. Mr. Donner was out of the case for years. What orders are we talking about? The notes of appeal. But it wasn't sent to him until? It was sent later on. That's correct. That's correct. His motion to dismiss was denied. And I don't presume what Mr. Gowen said. It's because he filed it late, because obviously you can raise jurisdiction at any time, Your Honor. I presume it's because the court didn't agree with the merits of the motion to dismiss. With respect to the Landau case, the Landau case isn't as procedurally clear as Mr. Jenkins would like to say, but one thing is clear. There was an appeal. There was an appeal filed, which would have done what? It would have divested the trial court of jurisdiction in the case. I don't know what the expert, Mr. Comey, was doing there, asking for his fees, prospective fees on appeal. But I do know that if the case was up on appeal, I don't know what the argument could have been that the trial court had jurisdiction to do anything, because it would have divested the jurisdiction in all respects. So the case itself is, in my opinion, about as clear as mud, and procedurally it doesn't really answer those questions. Let me ask you a question about this attorney client verdict. Is defending against a motion different than filing a malpractice case? Defending against a motion is not different if your defense to the motion is, I didn't do those things, my lawyers did. My lawyers did. I'm not the ones that filed these pleadings. My lawyers are the ones that came up with these arguments. My lawyers, my lawyers, my lawyers. How am I ever going to prove that? How can that not be a waiver of the attorney client privilege? And with respect, by the way, to this underlying argument that I saw at least Mr. Jenkins' client make, is that they shouldn't be, the attorney shouldn't be stung with Judge Barones' ruling that the complaints were sanctionable, because they didn't participate, they weren't a part of it, et cetera. Well, at least Mr. Grayson was, because Mr. Grayson was representing Mr. Short at the time during the hearing on the motion for sanctions. And he's the one that filed the briefs, and he's the one that argued against sanctions. Another issue that I believe Mr. Gowen brought up, I'm sorry, was Mr. Jenkins, is that the case went, this case went on for a long time. There was a motion for leave to file a Fifth Amendment complaint brought by Mr. Short's, one, two, three, four, Fifth Attorney. Fifth Attorney. Under their reading and their argument and their narrow, I believe, construction of Rule 137, of the FMI client, I never would have been able to attack that. I never would have been able to say, this is frivolous, there's no basis for it, this attorney or this party should be liable for 137 sanctions, because that should have sailed two and a half years prior. For two and a half years, there could have been things filed in this case, and there were lots of pleadings filed in this case, because the court still had jurisdiction, none of which was filed with the safety net of the possibility of having redress under 137. The motion, you would agree that the ruling on that was re-reviewed for an abuse of discretion, correct? I agree with that. That order was entered after a hearing on January 9th of 15, is that correct? I believe that's correct. Do we have a transcript of the January 9th of 15? I believe that there is one in the record, Your Honor. And it was, I think, at that hearing where Judge Baronis gave us leave to amend the Rule 137 motions to include the attorneys. That may have been 12-5-14. It may have been 12-5-14. I'll have to look. I mean, I don't know that I saw one from 1-9-15. Let me ask you this. Let's just assume for a minute, and maybe you're wrong, and we'll check. But let's assume for a minute we don't have a transcript of 1-9-15. Doesn't that make our review of an abuse of discretion impossible? Well, not if the salient facts, which I don't believe are in dispute, are that in response to the motion for sanctions, Mr. Short blamed his lawyers. And it's in the pleadings. And it's in the argument on the motion for sanctions. And all we argued in our motion for limine was by virtue of you doing that, you've waived the privilege. There is virtually no way that we can prove now what we need to prove if you're going to continue under the cloak of the attorney-client privilege. Thank you very much. Thank you all, counsel. We appreciate your argument. And we will take the matter under advisement. We will stand in recess to a short recess, I guess, to prepare for our next.